IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SHAUN MICHAEL MEEHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 2:22-cv-02105-SHM-tmp |
| v. | ) |
| | ) |
| S. YOUNG, ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER MODIFYING THE DOCKET;
DISMISSING AMENDED COMPLAINT (ECF NO. 10) WITH PREJUDICE;
DENYING LEAVE TO AMEND;
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH;
NOTIFYING MEEHAN OF THE COURT'S STRIKE RECOMMENDATION
PURSUANT TO 28 U.S.C. 1915(g);
AND NOTIFYING MEEHAN OF THE APPELLATE FILING FEE**

Before the Court are *pro se* Plaintiff Shaun Michael Meehan's amended claims under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Fed. Agents*, 403 U.S. 388 (1971). (ECF No. 10 (the "Amended Complaint"); *see also id*. at PageID 60.) For the reasons explained below, the Amended Complaint is DISMISED WITH PREJUDICE and leave to amend is DENIED.

**I.    BACKGROUND**

The Court has summarized the standards, the procedural history, and the factual background of this case, which need not be restated. (*See* ECF No. 9 at PageID 34-36.)

On January 19, 2023, the Court: (1) consolidated Case Nos. 22-cv-2105 and 22-cv-2106; (2) granted Meehan's motions to amend; (3) dismissed the Consolidated Amended Complaint (ECF Nos. 1, 5 & 7 ("CAC")) with prejudice in part and without prejudice in part; (4) granted leave to amend; and (5) denied Meehan's motion seeking appointment of counsel. (ECF No. 9.)

On February 9, 2023, Meehan filed an amended complaint (ECF No. 10 (the "Amended Complaint"), alleging claims arising from the fatal shooting of Meehan's dog, Nala, during the Defendants' execution of a Tennessee search warrant (the "Warrant") at Meehan's residence in Memphis, Tennessee on August 11, 2021 (the "Incident").  (ECF No. 10 at PageID 61-65.)

In the Amended Complaint, Meehan sues three (3) Defendants: (1) Shelby County Sheriff's Office Narcotics Division ("SCSO-ND") Detective Chase Young; (2) federal Bureau of Alcohol Tobacco and Firearms ("ATF") Special Agent Erik R. Filsinger; and (3) Shelby County, Tennessee (the "County").  (*Id*. at PageID 60-61.)  In the Amended Complaint (ECF No. 10), Meehan does not allege claims against (1) Multiple Unknown Named SCSO Swat Officers and (2) Multiple Unknown Named ATF Agents -- whom Meehan sued in the CAC.  (ECF No. 10 at PageID 60-61; *cf*. ECF Nos. 1, 5 & 7.)  The Clerk is DIRECTED to modify the docket by removing (1) Multiple Unknown Named SCSO Swat Officers and (2) Multiple Unknown Named ATF Agents as Defendants.

In the Amended Complaint, Meehan alleges: (1) claims under § 1983 against Young in his official and individual capacities for violation of the Fourth Amendment by (a) failing to "properly plan and investigate" before the Incident and (b) failing to "knock and announce" during the Incident; (2) a claim under § 1983 against the County for "fail[ure] to properly train officers in non-lethal methods of controlling animals"; and (3) claims against Filsinger in his individual capacity under *Bivens* for (a) failure to knock and announce before the Incident and (b) excessive force during the Incident.  (*Id*. at PageID 61-64.)

Meehan seeks (1) two million dollars ($2,000,000.00) "for pain and suffering, the loss of a beloved member of my family [and] psychological trauma"; and (2) "punitive damages to discourage this behavior in the future."  (*Id*. at PageID 64-65.)

2

On September 26, 2023, Meehan notified the Court that Meehan had been transferred to the "USP Yazoo City" in Yazoo City, Mississippi.[1] (ECF No. 11 at PageID 67; *see also* ECF No. 12 at PageID 69 (same, by October 10, 2023 letter from Meehan to the Clerk of Court).)

## II.     ANALYSIS

### A.     Claims Under § 1983 Against (1) Young In His Official And Individual Capacities And (2) The County For Violation Of Meehan's Fourth Amendment Right Against Unreasonable Seizure

Meehan sues Young in his official and individual capacities (ECF No. 10 at PageID 61) for:

> [F]ail[ing] to properly investigate and plan for the raid [of Meehan's residence], which contributed significantly to the unreasonable seizure of my dog, Nala. Young obtained information from a confidential informant that I was selling narcotics from my home [….] Surveillance was conducted on multiple occasions according to Detective Young, which would have undoubtedly provided information that dogs were present on the property.  Detective Young did not provide a proper plan to deal with the dogs besides shooting them [….] Detective Young […] failed to "knock and announce" when opening the back gate to the residence, which also contributed to the unreasonable seizure of Nala.  After opening the back gate, Detective Young, Special Agent Filsinger, and others instructed me to get on the ground, which I was in the process of doing when Nala came around the corner to check out the commotion in her yard.  Filsinger immediately and unreasonably shot my dog in the head.  I was given no opportunity to restrain her or call her off, which I am confident I could have done [….] Nala had no history of aggression, nor was she behaving aggressively when she was shot.

(ECF No. 10 at PageID 62-63.)  Meehan's allegations are construed as a claim under § 1983 against Young for violation of Meehan's Fourth Amendment right against unreasonable seizure.

### 1.    Official Capacity Claim Against Young; Claim Against The County

---

[1] According to the Federal Bureau of Prisons inmate locator website, Meehan is presently confined at the Federal Correctional Institution in Yazoo City, Mississippi (the "FCI-Yazoo City").  (*See* https:/www.bvop.gov/inmate/loc) (last accessed Jan. 23, 2025).

Meehan's official capacity claim against Young is construed as a claim against Young's employer -- the County. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). The County may be held liable only if Meehan's injuries were sustained pursuant to an unconstitutional custom or policy. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

Meehan does not allege that he has been deprived of a right because of an official policy or custom of the County. Meehan seeks relief based on the unique circumstances of Young's particular conduct in executing the Warrant during the Incident. (ECF No. 10 at PageID 61-63.) In the Amended Complaint, Meehan does not identify or describe a policy or custom of the County governing execution of warrants at locations where pets might reside, much less an unconstitutional policy or custom of the County pursuant to which Young acted to deprive Meehan of his constitutional rights. Meehan does not allege facts stating a claim to relief against (1) the County or (2) Young in his official capacity. The claims in the Amended Complaint against the County and Young in his official capacity are DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief.

4

**2. Individual Capacity Claim Against Young**

To the extent Meehan alleges an individual capacity claim against Young in the Amended Complaint for violation of the Fourth Amendment right against unreasonable seizure, Meehan fails to state a claim to relief.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The Fourth Amendment requires that "[n]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. am. IV. The Fourth Amendment requires warrants to contain sufficient detail for the executing officers to "ascertain and identify the place [to be searched]" with "reasonable effort." *United States v. Kirtdoll*, 101 F.4th 454, 456 (6th Cir. 2024) (citing *Steele v. United States*, 267 U.S. 498, 503 (1925)). "[A] warrant is facially invalid if it neither particularly describes the places to be searched and the things to be seized nor adequately describes the suspected criminal conduct to which the search is related." *United States v. Brown*, 49 F.3d 1162, 1174 (6th Cir. 1995). "Under the good-faith exception, evidence 'seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective will not be suppressed." *United States v. Manning*, No. 3:23-cr-105, 2024 WL 4135645, at *10 (6th Cir. May 10, 2024) (internal citations omitted). To determine whether the conduct of officers executing a search warrant violated the Fourth Amendment, courts consider whether the officers "acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *United States v. Asker*, 676 F. App'x 447, 453 (6th Cir. 2017). Under these

principles, the duty of an officer executing a warrant is to conduct the search within the scope of the terms set forth in the warrant, while acting in the objectively reasonable, good faith belief that the magistrate's warrant is not facially defective. *See*, *e.g.*, *United States v. Reed*, 993 F.3d 441, 450-51 (6th Cir. 2021); *Asker*, 676 F. App'x at 453.

Meehan does not allege that the Warrant was facially defective under the Fourth Amendment or that Young lacked good faith in relying on the Warrant's provisions. (*See* ECF No. 10 at PageID 61-64.) Meehan alleges instead that Young "failed to properly investigate and plan for the raid" and "did not provide a proper plan to deal with the dogs besides shooting them."[2] (*Id*. at PageID 62.) Meehan does not cite any cases holding that officers executing a warrant are constitutionally required to "properly investigate and plan for the raid." (*See* ECF No. 10 at PageID 62.) The Court is not aware of any precedent requiring agents like Young to do so.

Meehan's allegation about Young's failure to "plan and investigate" (ECF No. 10 at PageID 63) suggests that Young owed Meehan a duty of care under the Fourth Amendment when executing the Warrant. (*Id*.) Meehan's allegation is construed as a claim that Young was negligent when executing the Warrant. Meehan's allegation is not well taken. "[I]njury resulting from the negligence or even gross negligence of a [law enforcement] officer does not constitute a 'deprivation' of any constitutionally protected interest that would give rise to a cause of action under § 1983." *Adams v. City of Clarksville, Tennessee*, No. 3:09-cv-220, 2010 WL 11693100, at *8 (M.D. Tenn. Sept. 21, 2010) (citing *Lewellen v. Metro Gov't of Nashville & Davidson Cnty.*, 34 F.3d 345, 348 (6th Cir. 1994)). For that reason, Meehan does not allege facts demonstrating a

---

[2] The Amended Complaint alleges that only one dog – Nala – was fatally shot during the Incident, (ECF No. 10 at PageID 62-64.)

6

claim to relief against Young in his individual capacity for deprivation of rights secured by the "Constitution and laws" of the United States. *See Adickes*, 398 U.S. at 150.

Meehan's allegation that Young "fail[ed] to properly 'knock and announce'" himself, which "contributed to the unreasonable seizure of Nala", does not alter this conclusion. (ECF No. 10 at PageID 64.) "[T]he method of an officer's entry into a dwelling [is] among the factors to be considered in assessing the reasonableness of a search or seizure." *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995). "[T]he common-law knock and announce principle forms a part of the Fourth Amendment reasonableness inquiry." *Id.* at 930. Under the Fourth Amendment, officers must knock and announce their presence and authority before entering a private residence." *Ingram v. City of Columbus*, 185 F.3d 579, 588 (6th Cir. 1999). "[T]he knock and announce rule addresses the interests of all inhabitants of a private dwelling, innocent citizens and criminal suspects alike." *Id.* at 590. The knock and announce requirement serves the following interests: "(1) reducing the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) curbing the needless destruction of private property; and (3) protecting the individual's right to privacy in his or her house." *Adams v. Diamond*, 3:18-cv-0976, 2021 WL 11706139, at *9 (M.D. Tenn. Mar. 18, 2021) (internal citations omitted).

"An integral part of the knock and announce rule is the requirement that officers wait a 'reasonable' period of time after a knock before physically forcing their way into a residence. This gives the private resident the opportunity to allow them into the residence." *Id*. (internal citation omitted). Officers must knock, announce their presence and purpose, and wait a reasonable amount of time before entering a residence. As to what constitutes a "reasonable period of time," "[t]he Fourth Amendment's knock and announce principle, given its fact-sensitive nature, cannot be distilled into a constitutional stop-watch." *Id*. (internal citation omitted); *United States v.*

*Pinson*, 321 F.3d 558, 566 (6th Cir. 2003). "This is not to say, of course, that every entry must be preceded by an announcement. The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Wilson*, 514 U.S. at 934. "Officers are excused from compliance with the knock and announce requirement when they 'have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by allowing the destruction of evidence.'" *United States v. Smith*, 386 F.3d 753, 759 (6th Cir. 2004) (quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)).

Meehan does not allege that his "yard" was outside the area to be searched as described in the Warrant. He does not allege that the Warrant prohibited a no-knock entry of the yard. *See Smith*, 386 F.3d at 761. The plausible inference from the Amended Complaint is that no force was necessary to enter Meehan's yard, meaning the risk of potential violence was low. (*See* ECF No. 10 at PageID 62 (alleging that Young and Filsinger simply "open[ed] the back gate to the residence" to enter the yard).) *See, e.g.*, *United States v. Valenzuela*, 596 F.2d 1361, 1365 (6th Cir. 1979), *cert. denied*, 444 U.S. 865 (1979) (officer was not required to comply with federal knock and announce statute when the garage of the residence was open and the officer's entry did not amount to a "breaking" within the meaning of the statute); *United States v. McClard,* 333 F. Supp. 158, 167–68 (E.D. Ark. 1971), *aff'd,* 462 F.2d 488, *cert. denied,* 409 U.S. 988 (1972) (officer's violation of knock and announce rule at defendant's residence did not taint unannounced entry into unattached, open barn adjacent to residence). As alleged in the Amended Complaint, Filsinger and Young's entry into Meehan's yard did not require forcible entry.

Young's failure to knock and announce himself before entering the yard was not unreasonable under the Fourth Amendment.

For these reasons, Meehan's claim under § 1983 in the Amended Complaint against the Young in his individual capacity are DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief.

### B. Claims Against Filsinger Under *Bivens* For (1) Failure To Knock And Announce And (2) Excessive Force

Meehan alleges that Filsinger violated the Fourth Amendment's protection against unreasonable seizures by (1) "failing to properly knock and announce" himself, which "contributed to the unreasonable seizure of Nala"; and (2) "us[ing] excessive force" by "unreasonably sho[o]t[ing] Nala." (ECF No. 10 at PageID 64.) Meehan sues Filsinger in his individual capacity. (*Id.* at PageID 61.)

To the extent Meehan sues Filsinger for a Fourth Amendment violation under *Bivens* based on Filsinger's supervisory position within the ATF, Meehan fails to state a claim to relief as a matter of law. The doctrine of respondeat superior cannot provide the basis for liability in a *Bivens* action. *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (citing *Monell*, 436 U.S. at 691–95).

To the extent Meehan sues Filsinger for a Fourth Amendment violation under *Bivens* based on Filsinger's conduct during the Incident, Meehan's claim lacks merit. *Bivens*, 403 U.S. 388, provides a right of action against federal employees who violate an individual's rights under the United States Constitution. "Under the *Bivens* line of cases, the Supreme Court has recognized a cause of action against federal officials for certain constitutional violations when there are no alternative processes to protect the interests of the plaintiff and no special factors counseling against recognizing the cause of action." *Koubriti v. Convertino*, 593 F.3d 459, 466 (6th Cir.

9

2010). "It is firmly established that a plaintiff asserting a *Bivens* claim, as part of her prima facie case, must offer evidence to support an individual defendant's personal involvement in the deprivation of a constitutional right." *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013) (citing *Mueller v. Gallina*, 137 F. App'x 847, 850 (6th Cir. 2005) ("'[P]ersonal involvement is required to state a claim under *Bivens*'") (internal citation omitted)). A *Bivens* claim is brought against an individual "for his or her own acts, not the acts of others," including those of subordinates. *See Ziglar v. Abbasi*, 582 U.S. 120, 140-41 (2017); *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). "To establish a § 1983 [or *Bivens*] claim against a public official in his personal capacity, a plaintiff must show that the official either actively participated in the alleged unconstitutional conduct or 'implicitly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate.'" *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (internal citations omitted). *See also Rizzo v. Goode,* 423 U.S. 362, 373–77 (1976); *Nwaebo v. Hawk-Sawyer*, 100 F. App'x 367, 369 (6th Cir. 2004).

    The Supreme Court has recognized claims under *Bivens* in three contexts: (1) unreasonable search and seizure under the Fourth Amendment, *Bivens*; (2) employment discrimination under the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) inadequate medical treatment of an inmate under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). *See also Ziglar*, 582 U.S. at 130-31. "These three cases -- *Bivens, Davis*, and *Carlson* -- represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131. In 2017, the Supreme Court recognized that *Bivens* is well-settled law in its own context, but that "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity." *Ziglar*, 582 U.S. at 121 (citing *Ashcroft*, 556 U.S. at 675). In *Ziglar*, the Court set forth a two-pronged test to determine whether a *Bivens* claim may proceed. *Ziglar*,

582 U.S. at 135-36, 138-39.  The first prong requires courts to determine whether the claim presents *Bivens* in a "new context." *Id.*  If the case differs "in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Id.*  If the case presents a new context, courts should evaluate whether "special factors" militate against extending *Bivens*. *Id.*  The pertinent question is whether Congress or the courts are more suited to determine whether a damages action can proceed.  *Id*.

Following *Ziglar*, the Supreme Court in 2022 further analyzed the viability of two types of claims under *Bivens* -- a First Amendment excessive force claim and a First Amendment retaliation claim.  *See Egbert v. Boule*, 596 U.S. 482 (2022).  The Court directed lower courts to look to the two-step test set forth in *Ziglar* when determining whether to imply a *Bivens* extension, but noted that "those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*  If "there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Id.* (internal quotation marks and citation omitted).

### 1.   Meehan's Claims Against Filsinger Arise In A New *Bivens* Context

In the Amended Complaint, Meehan brings suit against state and federal officers – SCSO-ND Detective Young and ATF Special Agent Filsinger -- alleging that they unlawfully entered Meehan's yard, failed to knock and announce, and exercised excessive force when Nala was shot during execution of the Warrant.  (ECF No. 10 at PageID 61-64.)  Meehan's Fourth Amendment claims against Filsinger for (1) failure to knock and announce and (2) excessive force arise in a new *Bivens* context.

First, although *Bivens* also involved entry by law enforcement into a private residence (in Meehan's case, the residence's yard), Meehan's case is meaningfully different from the facts in

*Bivens*. Unlike the search and seizure facts in *Bivens*, Filsinger and Young acted pursuant to the Warrant during the Incident. *See Bivens*, 403 U.S. at 389 (plaintiff alleged that his arrest and the search of his apartment were conducted without a warrant); *Ziglar*, 582 U.S. at 139-40 ("A case might differ in a meaningful way" based on whether or not the search and seizure were carried out pursuant to a warrant); *see also Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (explaining that Fourth Amendment claims challenging warrantless searches are meaningfully different from claims concerning warrant-based searches for the purpose of "new context[s]" under *Bivens* because they "implicate[ ] distinct Fourth Amendment guarantee[s]" and are "governed by different legal standards").

Second, Meehan's factual allegations about the Incident meaningfully distinguish this case from *Bivens*. In *Bivens*, a plaintiff brought suit alleging that agents from the Federal Bureau of Narcotics entered his home, arrested him, handcuffed him in front of his wife and children, and searched the home before subjecting him to a strip search -- all without a warrant. *See Bivens*, 403 U.S. at 389. "Here, Plaintiff has brought suit against state and federal officers alleging the officers unlawfully entered h[is] home, failed to knock and announce, and exercised deadly force" while attempting to execute a warrant." *See McLeod v. United States*, No. 20-0595, 2024 WL 4311531, at *11 (S.D. Ala. Sept. 26, 2024). Meehan alleges two Fourth Amendment violations -- failure to knock and announce and use of deadly force against a pet -- neither of which was present in *Bivens*. Regardless of the violation alleged, the officers here are an ATF Special Agent and an SCSO-ND Detective (not Federal Bureau of Narcotics Officers, as in *Bivens*), who were working together to jointly execute the Warrant (as opposed to a warrantless search, as in *Bivens*) and participated in the use of deadly force (not just excessive force). "Individually or collectively, these differences are meaningful." *See McLeod*, 2024 WL 4311531, at *12.

To the extent Meehan suggests that ATF Special Agent Filsinger and SCSO-ND Detective Young were members of a multi-agency force, "Congress is better positioned than the Judiciary to determine whether a cause of action is available in the new context of [a federal agency] operating a joint state and federal task force to apprehend fugitives, particularly given that Congress has legislated in this area and has created no damages remedy. Second, the fact that Congress and the Executive Branch have created alternative procedures to review a claim that a task force member used excessive force forecloses a *Bivens* action here." *See Robinson v. Sauls*, 102 F.4th 1337, 1344 (11th Cir. 2024) (concluding that the case "present[ed] a new context because the Supreme Court has never recognized a cause of action for excessive force against officers operating as part of a USMS joint federal and state task force apprehending fugitives"); *cf. Bivens*, 403 U.S. at 389 (plaintiff alleged Fourth Amendment violation by six federal agents of the Bureau of Narcotics, without state or local agency involvement). To the extent Meehan's *Bivens* claims (regardless of whether the claims are for (1) failure to knock and announce or (2) use of deadly force) are asserted against Filsinger as a member of a joint federal and local agency effort Meehan's *Bivens* claims arise in a new context. Meehan asserts claims against a new *Bivens* category of defendants. *See McLeod*, 2024 WL 4311531, at *12.

### 2. "Special Factors" Preclude Meehan's *Bivens* Claims From Proceeding

Given that Meehan's case is meaningfully different from *Bivens, Davis*, and *Carlson*, the question is whether any "special factors counsel [ ] hesitation in the absence of affirmative action by Congress." *See Ziglar*, 582 U.S. at 136 (quoting *Carlson*, 446 U.S. at 18). The Supreme Court has not defined the "special factors," but has stated that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. The Supreme Court has noted

that such special factors may include whether there is "an alternative remedial structure present in a certain case," because "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Id*. at 137, 145.

Meehan does not allege facts about the "special factors" analysis, but relies solely on his contention that "[t]his action arises under 42 U.S.C. § 1983 and under *Bivens*." (ECF No. 10 at PageID 60.) Meehan's position is not compelling. Consideration of the pertinent "special factors" counsels against allowing Meehan's *Bivens* claim to proceed.

First, Meehan's claims arise in a "new context" that counsels dismissal. *See Egbert*, 596 U.S. at 492 ("If there is even a single "reason to pause before applying *Bivens* in a new context," a court may not recognize a *Bivens* remedy") (citing *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)). There is such reason to pause here. The Supreme Court has not recognized a *Bivens* claim for alleged violation of the Fourth Amendment by joint efforts of members of federal and local agencies.

Second, given the "unique circumstances" of Meehan's case -- including "the [potentially chilling] impact [that] [*Bivens*] liability [would have] on cooperation [between] [federal and local] law-enforcement agencies", *see Robinson*, 102 F.4th at 1345, "the Judiciary is not undoubtedly better positioned than Congress to authorize a damages action." *Id*. (quoting *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1358–59 (10th Cir. 2024) (quoting *Egbert*, 596 U.S. at 495)).

Here, these "special factors" urge the Court to resist extending *Bivens* to cover Meehan's "new context." Under *Bivens* and its progeny, Meehan's *Bivens* Fourth Amendment claims of (1) failure to knock and announce and (2) excessive force cannot proceed and are DISMISED WITH PREJUDICE.

### C. Claim Under § 1983 Against The County For Failure To Train Officers

Meehan alleges that the County "failed to properly train officers in non-lethal methods of controlling animals" (ECF No. 10 at PageID 62.) Because the Court has found that Meehan does not adequately allege an underlying violation of his constitutional rights by Young and Filsinger (*see* discussions, *infra*), the Court cannot plausibly infer that the County is liable under § 1983 for failure to train them. *See Long v. Sullivan Cnty.*, No. 2:24-cv-141, 2024 WL 4682700, at *4 (E.D. Tenn. Nov. 5, 2024) (citing *Monell*, 436 U.S. at 694); *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) ("'There can be no liability under *Monell* without an underlying constitutional violation'") (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)). For this reason, Meehan's claim against the County for failure to train is DISMISED WITH PREJUDICE.

### III. AMENDMENT OF THE AMENDED COMPLAINT

The Sixth Circuit has held that a District Court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded"). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged

15

by amendment comports with due process and does not infringe the right of access to the courts"). Because the Court has granted leave to amend the CAC (ECF No. 9 at PageID 56-57), further leave to amend would be futile. The Court DENIES leave to amend the Amended Complaint.

## IV.  APPELLATE ISSUES

Under Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), the Court must consider whether an appeal by Meehan would be taken in good faith. *See Callihan v. Schneider*, 178 F.3d 800, 803–04 (6th Cir. 1999). Under Rule 24(a), if the District Court permits a party to proceed *in forma pauperis*, that party may also proceed on appeal *in forma pauperis* without further authorization. There is an exception when the District Court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed *in forma pauperis*." Fed. R. App. P. 24(a)(3)(A). If the District Court denies pauper status, the party may move to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)–(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether a party appeals in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* "It would be inconsistent for a court to determine that a complaint should be dismissed prior to service on Defendants but has sufficient merit to support an appeal *in forma pauperis*." *DePriest v. Prestress Servs., Inc.*, No. 13-2768-JDT-cgc, 2014 WL 1269933, at *1 (W.D. Tenn. Mar. 27, 2014) (citing *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983)). For the same reasons the Court dismisses the Amended Complaint for failure to state a claim, the Court finds that an appeal would not be taken in good faith. The Court therefore CERTIFIES, under Federal Rule of Appellate Procedure 24(a), that any appeal by Meehan would not be taken in good faith. The Court DENIES leave to proceed on appeal *in forma pauperis*. If

Meehan appeals, he must pay the full six hundred and five dollar ($605.00) appellate filing fee or move for leave to appeal *in forma pauperis* with a supporting affidavit in the Sixth Circuit. *See* Fed. R. App. P. 24(a)(5).

V.      **NOTICE OF STRIKE RECOMMENDATION**

The "three strikes" provision of 28 U.S.C. § 1915(g) prevents a court from granting *in forma pauperis* status to a prisoner who "has, on 3 or more prior occasions, while incarcerated . . . brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). For § 1915(g) analysis of Meehan's future filings, if any, the Court RECOMMENDS that the dismissal of this case be treated as a strike pursuant to § 1915(g). *See Simons v. Washington*, 996 F.3d 350 (6th Cir. 2021).

VI.     **CONCLUSION**

For the reasons explained above:

A.      Meehan's claims in the Amended Complaint (ECF No. 10) under § 1983 against (1) Young in his official capacity and the County for violation of the Fourth Amendment by (a) failing to properly plan and investigate the Incident and (b) failing to knock and announce during the Incident; (2) Young in his individual capacity for violation of the Fourth Amendment by (a) failing to properly plan and investigate the Incident and (b) failing to knock and announce during the Incident; and (3) the County for failure to train are DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

B.      Meehan's claims in the Amended Complaint (ECF No. 10) under *Bivens* against Filsinger in his individual capacity for (a) failure to knock and announce and (b) excessive force

are DISMISSED WITH PREJUDICE for failure to state a claim to relief as a matter of law. *See* 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

      C.      Leave to amend the Amended Complaint (ECF No. 10) is DENIED.

      D.      The Court CERTIFIES that an appeal would not be taken in good faith.

      E.      The Court DENIES leave to proceed *in forma pauperis* on appeal.

      F.      For § 1915(g) analysis of Meehan's future filings, if any, the Court RECOMMENDS that the dismissal of this case be treated as a strike pursuant to § 1915(g). *See Simons*, 996 F.3d 350.

      G.      This case is DISMISSED in its entirety.

IT IS SO ORDERED this 23rd day of January, 2025.

                                    /s/ *Samuel H. Mays, Jr.*
                                    SAMUEL H. MAYS, JR.
                                    UNITED STATES DISTRICT JUDGE